**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| US RIGHT TO KNOW | ) | |
| 4096 Piedmont Avenue, # 963 | ) | |
| Oakland, CA 94611-5221 | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No. 1:24-cv-00982 |
| | ) | |
| DEFENSE INTELLIGENCE AGENCY | ) | |
| 7400 Pentagon | ) | |
| Washington, DC 20301 | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT UNDER THE FREEDOM OF INFORMATION ACT

Plaintiff US RIGHT TO KNOW ("USRTK") for its complaint against Defendant DEFENSE

INTELLIGENCE AGENCY ("DIA") alleges as follows:

1) This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to

   compel production of records and/or a lawful response on the part of the Defendant to

   two separate requests for certain described agency records, to which the Defendant has

   not lawfully responded.  The first request was made on January 17, 2024 and the second

   request was made on May 5, 2024.

2) These records are central to a matter of timely, current political and legal deliberations,

   of great public interest and policy and legal significance. Specifically, the records relate

   to the origins of the COVID-19 pandemic. Because of this Plaintiff also requested

   expedited processing of its second FOIA request dated May 5, 2024.

3) A true and correct copy of the first FOIA request at issue and dated January 17, 2024 is

   attached hereto as Exhibit A.

4) A true and correct copy of the Defendant's response to the first FOIA request at issue is

   attached hereto as Exhibit B.

5) A true and correct copy of the second FOIA request at issue and dated May 5, 2024 is attached hereto as Exhibit C.

6) A true and correct copy of the Defendant's two responses, dated May 6, 2024, to the second FOIA request at issue are attached hereto as Exhibit D and Exhibit E.

7) For both its first and second FOIA request, Plaintiff requested fee waivers on multiple bases, but Defendant has unlawfully failed to grant them.

8) For both its first and second FOIA request, Defendant's failure to timely provide Plaintiff with the requisite records or to timely make a determination relating to the Plaintiff's request within the 20-day time limit established under, *inter alia*, 5 U.S.C.S. § 552(a)(6)(A)(i), violates FOIA. This violation is made plain in binding precedent from the D.C. Circuit Court of Appeals in *Citizens for Responsibility and Ethics in Washington* (*CREW*) *v. Federal Election Commission*, 711 F.3d 180 (D.C. Cir. 2013). That case, in turn, explains that a FOIA "determination" requires more than a mere letter acknowledging the existence of a request and that the failure to timely make a "determination" renders a case ripe for judicial review.

9) Defendant's failure to respond in any meaningful way, whatsoever, to either of Plaintiff's requests, despite the passage of nearly five months since Plaintiff's first request, and the passage of nearly two months since Plaintiff's second request has constructively exhausted all of Plaintiff's administrative remedies, leaving Plaintiff no choice but to file this lawsuit to compel the DIA to comply with the law regarding release of agency records, the making of a determination.

10) In this context, Plaintiff asks this Court to compel Defendant to search for and release records responsive to its two FOIA requests, and to provide an index of any claimed exempt material for purposes of further judicial review.

11) Plaintiff's second FOIA request dated May 5, 2024 also requested expedited processing of that request and explained in detail the basis therefore.

12) Plaintiff's second FOIA request extensively described its basis for requesting expedited processing including, *inter alia*, the fact that Plaintiff is primarily engaged in disseminating information and that the records sought pertain definitively to DIA's official government activities.

13) Plaintiff's second FOIA request further explained that it had a demonstrable and compelling need for expedited processing because the records sought go to the still unanswered questions surrounding the DIA's research into the origins of COVID-19; because there was demonstrable and great public interest in the records sought; because this great public interest has been underscored by relentless and ongoing media interest in the records sought; and because the records sought also pertain to an ongoing political debate over the origins of COVID-19 and does so mere months before national elections.

14) On May 6, 2024, less than 24 hours after Plaintiff made its second FOIA request, Defendant, by way of email, summarily rejected Plaintiff's request for expedited processing.

15) Defendant's denial of Plaintiff's request for expedited processing contained no explanation and failed entirely to address Plaintiff's facts and arguments in support of its application for expedited processing.

16) Defendant's denial of Plaintiff's request for expedited processing simply stated, without more, that "[u]nfortunately your request do not meet the outlined criteria to grant expedited processing."

17) Defendant's denial, which provided no connection between its decision and Plaintiff's request for expedited processing was precisely the sort of agency response that is

impermissible under FOIA and the Administrative Procedure Act. *See Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("the agency must explain why it decided to act as it did. The agency's statement must be one of reasoning; it must not be just a conclusion; it must articulate a satisfactory explanation for its action.")

## PARTIES

18) Plaintiff USRTK is a nonprofit investigative research group focusing on promoting transparency for public health. It works globally to expose corporate wrongdoing and government failures and/or malfeasance that threaten public health, the environment or the food system. Since 2015, it has obtained, posted online, and shared with the media, thousands of industry and government documents, including many obtained through judicial enforcement of open records laws. Tens of thousands of pages of documents obtained by USRTK are now available for free public access.

19) Defendant DIA is a federal "agency" within the meaning of the Freedom of Information Act and is a constituent component of the Department of Defense. The DIA's headquarters is located in the District of Columbia at Joint Base Anacostia-Bolling.

## JURISDICTION AND VENUE

20) This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is brought in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of disputes under FOIA presents a federal question.

21) Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because Defendant is headquartered in the District of Columbia at Joint Base Anacostia-Bolling.

## STATUTORY BACKGROUND

22) FOIA provides that a requesting party is entitled to a substantive agency response within twenty working days, including a determination of whether the agency intends to comply

with the request. 5 U.S.C. § 552(a)(6)(A)(i).  Within that deadline, the agency must also

"determine and communicate the scope of the documents it intends to produce and

withhold, and the reasons for withholding any documents," and "inform the requester

that it can appeal whatever portion of the agency's "determination" is adverse to the

requestor. *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

23) 5 U.S.C.S. § 552(a)(6)(A) prescribes that the 20-day time limit shall not be tolled by the

agency except in two narrow scenarios: The agency may make one request to the

requester for information and toll the 20-day period while it is awaiting such information

that it has reasonably requested from the requester, § 552(a)(6)(A)(ii)(I), and agencies

may also toll the statutory time limit if necessary to clarify with the requester issues

regarding fee assessment. § 552(a)(6)(A)(ii)(II). In either case, the agency's receipt of

the requester's response to the agency's request for information or clarification ends the

tolling period. Neither apply here because DIA did not seek additional information from

Plaintiff regarding the request at issue in this suit.

24) On Plaintiff's first request, Defendant owed USRTK a "determination" with respect to

its request, as that term is defined in *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013),

by approximately February 14, 2024 (or at the latest approximately February 28, 2024, if

Defendant had demonstrated "unusual circumstances" that truly prevented an earlier

response). To date, however, DIA has provided no substantive response or

"determination" with respect to the request at issue.

25)    On Plaintiff's second request, Defendant owed USRTK a "determination"

with respect to its request, as that term is defined in *CREW v. FEC*, 711 F.3d 180, 188

(D.C. Cir. 2013), by approximately June 3, 2024 (or at the latest approximately June 17,

2024, if Defendant had demonstrated "unusual circumstances" that truly prevented an

earlier response). To date, however, DIA has provided no substantive response or

"determination" with respect to the request at issue.

26) In *Bensman v. National Park Service*, 806 F. Supp. 2d 31 (D.D.C. 2011), this Court

noted: "[The effect of] the 2007 Amendments was to impose consequences on agencies

that do not act in good faith or otherwise fail to comport with FOIA's requirements. *See*

S. Rep. No. 110-59.

27) To underscore Congress's belief in the importance of the statutory time limit, the 2007

Amendments declare that '[a]n agency shall not assess search fees… if the agency fails

to comply with *any time limit*' of FOIA" (*emphasis* added).

28) Defendant is now past its statutory period for issuing a lawful determination with respect

to the above-described request. Further, that time has elapsed without the Defendant

having provided any substantive response to Plaintiff's request. Among the

consequences of Defendant's violation(s) of the statutory time limits of FOIA is that

Defendant cannot now seek fees.

29) Defendant is improperly failing to search for records, failing to produce records, failing

to issue a determination, and failing to grant a fee waiver to the Plaintiff.

30) DIA is constructively or actually denying Plaintiff access to agency records and a lawful

determination with respect to such records in violation of FOIA.

## **FIRST CLAIM FOR RELIEF**
### **Duty to Produce Records – Declaratory Judgment**

31) Plaintiff re-alleges paragraphs 1-30 as if fully set out herein.

32) Plaintiff has sought and been denied production of responsive records reflecting the

conduct of official government business.

33) Plaintiff has a statutory right to the information it seeks and that Defendant has

unlawfully withheld.

34) Plaintiff is not required to further pursue administrative remedies, or alternatively has

constructively exhausted such remedies.

35) Plaintiff asks this Court to enter a judgment declaring that:

    a.    Plaintiff is entitled to records responsive to its two FOIA requests described above, and any attachments thereto, but Defendant failed to provide them; and that

    b.    Defendant's processing of Plaintiff's FOIA two requests described above is not in accordance with the law, and does not satisfy Defendant's obligations under FOIA; and that

    c.    Defendant must now produce records responsive to both of Plaintiff's requests and must do so at no cost to the Plaintiff.

## SECOND CLAIM FOR RELIEF
## Duty to Produce Records – Injunctive Relief

36) Plaintiff re-alleges paragraphs 1-35 as if fully set out herein.

37) Plaintiff is entitled to injunctive relief compelling Defendant to search for and produce the records responsive to the two FOIA requests described in this pleading.

38) Plaintiff asks the Court to enter an injunction ordering Defendant to search for and produce to Plaintiff, within 10 business days of the date of the order, the requested records sought in Plaintiff's two FOIA requests described above, and any attachments thereto.

39) Plaintiff asks the Court to order the parties to consult regarding withheld documents and to file a status report to the Court within 30 days after Plaintiff receives the last of the produced documents, addressing Defendant's preparation of a *Vaughn* log and a briefing schedule for resolution of remaining issues associated with Plaintiff's challenges to Defendant's withholdings, if any, and any other remaining issues.

**THIRD CLAIM FOR RELIEF**
**Duty to Provide Expedited Processing – Injunctive Relief**

40) Plaintiff re-alleges paragraphs 1-39 as if fully set out herein.

41) Plaintiff sought expedited processing of its second request pursuant to Defendant's expedited processing regulations 32 CFR § 286.8(e) and were wrongfully denied it.

42) Plaintiff has established that it is a media outlet for FOIA purposes and that it is primarily engaged in the dissemination of information.

43) The information requested has more value at the present moment than it will in the future for many reasons including: because media attention in the origins of COVID-19 is extremely high and because the origins of COVID-19 are also part of an ongoing political and public debate over both the origins of COVID-19 and the government's response to it.

44) Plaintiff has established that their request pertains to Government activity.

45) Plaintiff has established that there is an urgency to inform the public about this Government activity and that Plaintiff as a media outlet, is in a position to do so.

46) Plaintiff has already provided the DIA with the requisite specificity regarding their ability to inform the public and need not do more.[1]

47) Defendant's prior denial of Plaintiffs' request for expedited processing was not in accordance with the law and does not satisfy DIA's obligations under FOIA.

48) Plaintiff is not required to pursue administrative remedies as pertains to its request for expedited processing.

49) Plaintiff therefore ask this court to enter a mandatory injunction ordering that the Defendant process the request at issue herein on an expedited basis.

50) Plaintiff ask this Court to enter a judgment declaring that:

---

[1] *See e.g., Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003) ("the government points to nothing in FOIA, the IRS regulation, or our case law requiring such pointless specificity")

- Plaintiffs are entitled to have their FOIA request, as described above, processed under the DIA's expedited track.

- DIA's denial of Plaintiffs' request for expedited processing was not in accordance with the law and does not satisfy the DIA's obligation under FOIA; DIA must now place Plaintiffs request, as described above, in their expedited processing track.

## FOURTH CLAIM FOR RELIEF
### Costs And Fees – Injunctive Relief

51) Plaintiff re-allege paragraphs 1-50 as if fully set out herein.

52) Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

53) This Court should enter an injunction or other appropriate judgment or order requiring the Defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought, and an award for its attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 24th day of June, 2024,

US RIGHT TO KNOW
By Counsel:
/s/ Nathaniel M. Lindzen
Nathaniel M. Lindzen, MA Bar No. 689999[2]
Law Office of Nathaniel M. Lindzen
57 School Street
Wayland, MA 01778
Phone: (212) 810-7627
Email: nlindzen@corpfraudlaw.com

---

[2] D.C. Federal Bar ID No. MA0053

EXHIBIT A

# R

**U.S. RIGHT TO KNOW**

*Pursuing truth and transparency for public health*

January 17, 2023

Cheryl Cross-Davison
Chief, Records and Open Government
Records Management and Information Services
Defense Intelligence Agency

Via email: foia1@dodiis.mil

      **RE:**    **Freedom of Information Act request**

Dear Ms. Cross-Davison:

This is a two-part request under the Freedom of Information Act, 5 U.S.C. § 552, et seq., to the Defense Intelligence Agency ("DIA").

We request all formal or informal reports, briefings, assessments, and images produced by the National Center for Medical Intelligence pertaining to any of the following topics:

1. Genomic analysis of the origins of SARS-CoV-2
2. Epidemiological data relevant to the origins of SARS-CoV-2
3. Assessment or reference to a possible lab origin of SARS-CoV-2

The time period covered by all parts of this request is from May 1, 2021 to August 31, 2021.

We request that you disclose these documents and materials as they become available to you, without waiting until all the documents have been assembled. If documents are denied in whole or in part, please specify which exemption(s) is (are) claimed for each passage or whole document denied. Give the number of pages in each document and the total number of pages pertaining to this request and the dates of documents withheld. We request that excised material be "blacked out" rather than "whited out" or cut out and that the remaining non-exempt portions of documents be released as provided under the Freedom of Information Act.

Please advise of any destruction of records and include the date of and authority for such destruction. As we expect to appeal any denials, please specify the office and address to which an appeal should be directed.

## REQUEST FOR FEE WAIVER

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *NARA v. Favish*, 541 U.S. 157, 171 (2004) quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as U.S. Right to Know access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and *non-profit public interest groups*." *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ... ." 132 Cong. Rec. S. 14298 (statement of Senator Patrick Leahy).

**I. U.S. Right to Know Qualifies for a Fee Waiver.**

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

Thus, the DIA must consider six factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject, (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. *Id*. § 2.107(1)(2), (5) whether a commercial interest exists and its magnitude, and (6) the primary interest in disclosure. As shown below, U.S. Right to Know meets each of these factors.

> **A. The Subject of This Request Concerns "The Operations and Activities of the Government."**

The subject matter of this request concerns the operations and activities of the DIA. This request is about the DIA's knowledge of the scientific evidence concerning the origins of COVID-19.

This FOIA will provide U.S. Right to Know and the public with crucial insight into the activities of the DIA in relation to the US Government's efforts to understand the origins of the COVID-19 pandemic. It is clear that a federal agency's oversight of health, safety and security threats, both foreign and in the U.S. is a specific and identifiable activity of the government, and in this case it is the executive branch agency of the DIA. *Judicial Watch*, 326 F.3d at 1313 ("[R]easonable specificity is all that FOIA requires with regard to this factor") (internal quotations omitted). Thus, U.S. Right to Know meets this factor.

**B. Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.**

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow U.S. Right to Know to convey to the public information about the DIA's activities in relation to investigating the origin of COVID-19. Once the information is made available, U.S. Right to Know will analyze it and present it to the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of the DIA's operations and activities.

**C. Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of Government Responses to the COVID-19 Pandemic**

The requested records will contribute to public understanding of whether the DIA's actions concerning information about the origins of COVID-19 were consistent with its purpose to "serve as the Nation's primary manager and producer of foreign military intelligence, and [] a central intelligence producer and manager for the secretary of defense, the Joint Chiefs of Staff and combatant commands." As explained above, the records will contribute to public understanding of this topic.

Activities of the DIA generally, and specifically its activities to investigate the origins of the COVID-19 pandemic are areas of interest to a reasonably broad segment of the public. U.S. Right to Know will use the information it obtains from the disclosed records to educate the public at large about this topic. *See W. Watersheds Proj. v. Brown*, 318 F. Supp.2d 1036, 1040 (D. Idaho 2004) (finding that "WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and

also how ... management strategies employed by the BLM may adversely affect the environment").

Through U.S. Right to Know's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained in and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter. *Ettlinger v. FBI*, 596 F. Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dept. of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban Dev.*, 405 F. Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which are not currently in the public domain. *See Cmty. Legal Servs.*, 405 F. Supp.2d at 560 (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations... ."1[1]

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of DIA's activities toward finding the origins of the COVID-19 pandemic. The public is always well served when it knows how the government conducts its activities, particularly matters touching on legal questions. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about this pressing issue.

## II. Disclosure is Likely to Contribute Significantly to Public Understanding of Government Operations or Activities.

U.S. Right to Know is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of what the DIA knows about the state of scientific evidence concerning the origin of COVID-19. The records are also certain to shed light on the DIA's compliance with its own mission and purpose. Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, U.S. Right to Know meets this factor as well.

## III. Obtaining the Requested Records is of No Commercial Interest to U.S. Right to Know

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to U.S. Right to Know's role of educating the general public. Founded in 2014, U.S.

Right to Know is a 501(c)(3) nonprofit public interest, public health organization (EIN: 46-5676616). U.S. Right to Know has no commercial interest and will realize no commercial benefit from the release of the requested records.

**IV. U.S. Right to Know's Primary Interest in Disclosure is the Public Interest.**

As stated above, U.S. Right to Know has no commercial interest that would be furthered by disclosure. Although even if it did have an interest, the public interest would far outweigh any pecuniary interest.[1]

U.S. Right to Know is a non-profit organization that informs, educates, and counsels the public regarding corporate wrongdoing and government failures that threaten the integrity of our food system, our environment and our health. U.S. Right to Know has been substantially involved in the activities of numerous government agencies for over eight years, and has consistently displayed its ability to disseminate information granted to it through FOIA.

In granting U.S. Right to Know's fee waivers, agencies have recognized: (1) that the information requested by U.S. Right to Know contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that U.S. Right to Know possesses the expertise to explain the requested information to the public; (4) that U.S. Right to Know possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes U.S. Right to Know as an established expert in the field of public health. U.S. Right to Know's track record of active participation in oversight of governmental activities and decision making, and its consistent contribution to the public's understanding of those activities as compared to the level of public understanding prior to disclosure are well established.

U.S. Right to Know intends to use the records requested here similarly. U.S. Right to Know's work appears frequently in news stories online and in print, radio and TV, including reporting in outlets such as *The New York Times* and *The Guardian*, as well as medical and public health journals such as the *BMJ*. Many media outlets have reported about the food and chemical industries using information obtained by U.S. Right to Know from federal agencies. In 2023, more than 744,000 people visited U.S. Right to Know's extensive website, and viewed pages more than one million times. U.S. Right to Know and its staff regularly tweet to a combined following of 70,000 on Twitter, and nearly 10,000 people follow U.S. Right to Know on Facebook.  U.S. Right to Know intends to use any or all of these media outlets to share with the public information obtained as a result of this request.

Public oversight and enhanced understanding of the DIA's duties is absolutely necessary. In determining whether disclosure of requested information will contribute significantly to public

---

[1]  In this connection, it is immaterial whether any portion of U.S. Right to Know's request may currently be in the public domain because U.S. Right to Know requests considerably more than any piece of information that may currently be available to other individuals. *See Judicial Watch*, 326 F.3d at 1315.

understanding, a guiding test is whether the requester will disseminate the information to a reasonably broad audience of persons interested in the subject. *Carney*, 19 F.3d 807. U.S. Right to Know need not show how it intends to distribute the information, because "[n]othing in FOIA, the [agency] regulation, or our case law require[s] such pointless specificity." *Judicial Watch*, 326 F.3d at 1314. It is sufficient for U.S. Right to Know to show how it distributes information to the public generally. *Id.*

Please send the documents electronically in PDF format to Emily Kopp at emily@usrtk.org. If you need additional information please call, rather than write, Emily at (770) 789-4628.

Thank you so much for your help in filling this request.

Sincerely,

Emily Kopp
Investigative Reporter

Hana Mensendiek
Investigator

Gary Ruskin
Executive Director

EXHIBIT B



# DEFENSE INTELLIGENCE AGENCY

### WASHINGTON, D.C. 20340-5100



U-24-6529/IMO-2 (FOIA)

January 18, 2024
FOIA-00088-2024

Hana Mensendiek

Dear Ms. Mensendiek:

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request dated January 17, 2024 and is an interim response. You requested:

- **All formal or informal reports, briefings, assessments, and images produced by the National Center for Medical Intelligence pertaining to any of the following topics:**
  **1. Genomic analysis of the origins of SARS-CoV-2**
  **2. Epidemiological data relevant to the origins of SARS-CoV-2**
  **3. Assessment or reference to a possible lab origin of SARS-CoV-2**

  **The time period covered by all parts of this request is from May 1, 2021 to August 31, 2021**

We received your request on January 18, 2024 and assigned it case number FOIA-00088-2024. Please use this number on all future correspondence with us regarding your request.

We are unable to respond to your request within the statutory 20 days' response period due to one or more of the following reasons, which are defined in the statute as "unusual circumstances": (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

At this stage of processing your request, we cannot provide an estimated date of completion. As analysis and processing of your request continues, a case officer will better be able to provide an estimate, and at that time, we will provide you with a further interim response.

We typically process requests in the order of receipt. Our backlog currently is in excess of 1,200 requests. The time it takes to respond to a request will vary depending on the complexity of the request and any backlog of requests already pending. If your request is complex, a case officer may contact you to discuss options for expediting your request, including: (I) narrowing the scope or focus of your request or increasing its specificity; (II) specifically describing

record(s) you are looking for with additional descriptive details; and (III) including specific event-related information.

We regret that there is currently a substantial delay in processing requests and solicit your patience and understanding. We will process your request as soon as possible. Our FOIA Requester Service Center is available to assist you with any question about the status of your request and any steps you can take to receive a potentially quicker response. For questions, please contact the FOIA Requester Service Center or our FOIA Public Liaison, preferably via email at FOIA1@dodiis.mil, or at 301-394-6253. DIA's FOIA website is: www.dia.mil/FOIA.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services that they offer. You may contact OGIS at ogis@nara.gov, toll-free 1-877-684-6448, phone 202-741-5770, fax 202-741-5769, or the following address:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road-OGIS
> College Park, MD 20740-6001

Sincerely,

(for)
Cheryl Cross-Davison
Chief, Records and Open Government

EXHIBIT C

**REQUEST UNDER THE FREEDOM OF INFORMATION ACT
EXPEDITED PROCESSING REQUESTED**

May 5, 2024

<u>Via Electronic Mail and USPS</u>
Chief FOIA Officer
Defense Intelligence Agency
ATTN: IMO-2 (FOIA)
7400 Pentagon
Washington, DC 20301-7400
**foia1@dodiis.mil**

Re: Freedom of Information Act Request Pertaining to Records related to the genomic analysis of

SARS-CoV-2. EXPEDITED PROCESSING REQUESTED.

INTRODUCTION

On behalf of US Right to Know ("USRTK"), undersigned counsel hereby submits the

following request, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq*.

USRTK is recognized by the Internal Revenue Service as a non-profit organization under §

501(c)(3) of the Internal Revenue Code and organized under the laws of California State.

USRTK maintains research, publication and other media functions, as well as a transparency

initiative seeking public records relating to health and food system safety and government policy

thereon. All of these functions include the broad dissemination of public information obtained

under open records and freedom of information laws. In this request, USRTK therefore also

requests a fee waiver, on two bases in the alternative, as described below, both of which Defense

Intelligence Agency ("DIA") must address if it denies fee waiver. Because the records sought

pertain to a large, ongoing, public and political debate over health policy as pertains to COVID-

1

19, USRTK also requests expedited processing of its request on the basis of compelling need; the DIA must also address this basis if it denies USRTK's request for expedited processing.

Please provide us, within twenty working days,[1] copies of all of the records as described in the two-part request below. In the alternative, USRTK is willing to receive records on a rolling basis, but only within the requirements of FOIA.

## DEFINITIONS

For the purposes of this request, the time period covered by all parts of this request is from September 1, 2019 to January 1, 2021 unless otherwise specified.

For the purposes of this request, the term "genomic analyses" means examination or assessment of the SARS-CoV-2 genome whole or in-part for the presence of unique or unusual features such as (but not limited to) cleavage sites, restriction sites, and synonymous or non-synonymous mutations, or alignments or comparisons of the SARS-CoV-2 genome with the genomes of SARS or other SARS-like coronaviruses.

For the purposes of this request the word "email" as used herein includes electronic mail whether kept by the listed individuals, their current or former support staff and/or the DIA in *any* electronic system for maintaining such emails including on any phone that is or has been used at any time for work-related purposes by the below named individuals or their support staff, including but not limited to a phone(s) or other PDA issued to the named individual, whether Google/Gmail, Outlook or other.

For the purpose of this request, "Request" means this FOIA request dated May 3, 2024.

---

[1] *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013).

<u>REQUESTS</u>

PART I.

This is a request for each of three parties listed directly below, seeking correspondences that are to or from them, over the period September 1, 2019 to January 1, 2021, and containing any of the below keywords or combinations thereof. We request entire "threads" of which any responsive electronic correspondence is a part, regardless of whether any portion falls outside of the above time parameter; please also include emails where the below individuals are cc'd or bcc'd.

1) Individuals:

   a) Robert Greg Cutlip, former senior research scientist, National Center for Medical Intelligence ("NCMI");

   b) Jean-Paul Chretien, former chief, Pandemic Warning Team, NCMI;

   c) John Hardham, former research scientist, NCMI.

2) Keywords:

   a) "SARS-CoV-2"

   b) "ACE2"

   c) "proximal origin"

PART II.

USRTK requests records containing genomic analysis of the SARS-CoV-2 virus and other records incorporating those genomic analysis where the resultant records fit either or both of the following two criteria:

1. Records that relate in any way to the genomic analysis of SARS-CoV-2 that were authored and/or performed by Robert Greg Cutlip, Jean-Paul Chretien, and John Hardham;

<u>and/or</u>

2.  Records that relate in any way to the genomic analysis of SARS-CoV-2 <u>and</u> which formed

    any basis for the working paper produced within the National Center for Medical

    Intelligence (NCMI) dated May 26, 2020, and titled "Critical Analysis of Andersen et al.

    The proximal origin of SARS-CoV-2."  Please also provide all drafts, corrections, updates

    and versions of the aforementioned records on or before the date of publication.

**To narrow this request, please consider as non-responsive electronic correspondence that merely receives or forwards newsletters or press summaries or 'clippings', such as news services or stories or opinion pieces, if that correspondence has no comment or no substantive comment added by a party other than the original sender in the thread (an electronic mail message that includes any expression of opinion or viewpoint would be considered as including substantive comment; examples of non-responsive emails would be those forwarding a news report or opinion piece with no comment or only "fyi", or "interesting").**

**Additionally, please consider all published or docketed materials, including pleadings, regulatory comments, ECF notices, news articles, and/or newsletters, as non-responsive, unless forwarded to or from the named persons with substantive commentary added by the sender.**

<u>DIA OWES USRTK A REASONABLE SEARCH</u>

FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Itrurralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). This search

should be <u>non-conflicted,</u> i.e., the DIA should not simply rely upon a request of the party/parties whose records are at issue in the request for the purpose of its search.  While the exact location the records are held is unknown to requester, DIA doubtless knows where to find email repositories and research and data folders of the specific, identified employees or former employees.


## DIA MUST ERR ON THE SIDE OF DISCLOSURE

Please identify and inform us of all responsive or potentially responsive records within the statutorily prescribed time, and the basis of any claimed exemptions or privilege. This includes specifying to which specific responsive or potentially responsive record(s) such objection applies.

Pursuant to high-profile and repeated promises and instructions from a previous President and Attorney General we request DIA err on the side of disclosure and not delay production of this information of great public interest through lengthy review processes over which withholdings they may be able to justify. In the event that DIA claims any records or portions thereof are exempt under any of FOIA's discretionary exemptions, we request you exercise that discretion and release them consistent with statements by the past President and Attorney General, *inter alia*, that "The old rules said that if there was a defensible argument for not disclosing something to the American people, then it should not be disclosed. That era is now over, starting today" (President Barack Obama, January 21, 2009), and "Under the Attorney General's Guidelines, agencies are encouraged to make discretionary releases. Thus, even if an exemption would apply to a record, discretionary disclosures are encouraged." (Department of

Justice, Office of Information Policy, OIP Guidance, "Creating a 'New Era of Open Government'").

Nonetheless, if your office takes the position that any portion of the requested record(s) may be exempt from disclosure, please inform us of the basis of any partial denials or redactions, and provide the rest of the record, all reasonably segregable, non-exempt information, withholding only that information that is properly exempt under one of FOIA's nine exemptions. *See* 5 U.S.C. §552(b). We remind the DIA that it cannot withhold entire documents rather than producing their "factual content" and redacting any information that is legally withheld under FOIA exemptions. As the D.C. Circuit Court of Appeals noted, the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents." *King v. Department of Justice*, 830 F.2d 210, at 254 n.28 (D.C. Cir. 1987). As an example of how entire records should not be withheld when there is reasonably segregable information, we note that at bare minimum basic identifying information (that is "who, what, when" information, e.g., To, From, Date, and typically Subject) is not "deliberative".

If it is your position that a document contains non-exempt segments and that those nonexempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed through the document. See *Mead Data Central v. Department of the Air Force*, 455 F. 2d 242, 261. Further, we request that you provide us with an index all such withheld documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972), with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" pursuant to *Founding Church of Scientology v. Bell*, 603 F.2d 945,

959 (D.C. Cir. 1979), and "describ[ing] each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. Department of Justice*, 830 F.2d at 223-24.

Claims of non-segregability must be made with the same practical detail as required for claims of exemption in a Vaughn index. If a record is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

Please provide responsive documents in complete form. Any burden on the DIA will be lessened if it produces responsive records without redactions and in complete form.

<u>FORMAT OF REQUESTED RECORDS</u>

Under FOIA, the DIA is obligated to provide records in a readily accessible electronic format and in the format requested. See, *e.g.*, 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily accessible" means text-searchable and OCR-formatted. See 5 U.S.C. § 552(a)(3)(B).

USRTK requests records on your system, e.g., its backend logs, and does not seek only those records which survive on an employee's, or former employee's own machine or account. We do not demand your office produce requested information in any particular form, instead **we request records in their native format**, with specific reference to the U.S. Securities and Exchange Commission Data Delivery Standards.[2] The covered information we seek is electronic information, this includes electronic *records*, and other public *information*. To quote the SEC

---

[2] https://www.sec.gov/divisions/enforce/datadeliverystandards.pdf, (last electronically accessed May 3, 2024).

7

Data Delivery Standards, "Electronic files must be produced in their native format, *i.e.,* the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. ***(Note: An Adobe PDF file is not considered a native file unlessthe document was initially created as a PDF.)***" (emphases in original).

In many native-format productions, certain public information remains contained in the record (e.g., metadata). Under the same standards, to ensure production of all information requested, if your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and 2) make that unique metadata part of your production.

Native file productions may be produced without load files. However, native file productions must maintain the integrity of the original metadata and must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. A separate folder should be provided for each custodian.

In the event that necessity requires your office to produce a PDF file, due to your normal program for redacting certain information and such that native files cannot be produced as they are maintained in the normal course of business, in order to provide all requested information each PDF file should be produced in separate folders named by the custodian, *and* accompanied by a load file to ensure the requested information appropriate for that discrete record is associated with that record. The required fields and format of the data to be provided within the load file can be found in Addendum A of the above-cited SEC Data Standards. All produced PDFs must be text searchable.

We appreciate the inclusion of an index.

FEES

In the interests of expediting the search and processing of this Request, USRTK is willing to provisionally pay fees up to $300 in the event the DIA denies our fee waiver *requests* detailed, *infra*, as we appeal such a determination. Please provide an estimate of anticipated costs in the event that fees for processing this Request will exceed $400. To keep costs and copying to a minimum, please provide copies of all productions to the email used to send this request. Given the nature of the records responsive to this request, most or all should be in electronic format, and therefore there should be no photocopying costs (see discussion, *infra*).

FEE WAIVER REQUEST

**Our request for fee waiver is in the alternative, first for reasons of significant public interest, and second, on the basis of the USRTK's status as a media outlet and a nonprofit public interest group that provides information to the public**. The DIA must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious.

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver

requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizationssuch as USRTK's access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and non-profit public interest groups." *Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information" 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

## USRTK QUALIFIES FOR A FEE WAIVER

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). See also, 32 C.F.R. § 286.12.

The DIA must consider four factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "government operations or activities," (2) whether the disclosure "is likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "is likely to contribute to public understanding" of a reasonably broad audience of persons interested in the subject, and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. 32 C.F.R. § 286.12(l). As shown below, USRTK and this request meet each of these

factors.

THE SUBJECT OF THIS REQUEST CONCERNS THE "OPERATIONS AND ACTIVITIES
OF THE GOVERNMENT"

NMCI (a component of the DIA) is tasked with producing medical intelligence and other

intelligence on foreign health threats and other medical issues to protect U.S. interests

domestically and abroad. The subject matter of this request concerns those activities, namely its

role in analyzing and responding to a virus that is estimated to have killed more than one million

Americans, namely the SARS-CoV-2 virus, which causes COVID-19. As one subject of this

request amply shows, these analysis and response activities were carried out by the NCMI and

DIA.  *See supra* at p.4, Jean-Paul Chretien et al., "Critical Analysis of Andersen et al. The

proximal origin of SARS-CoV-2."[3,4] A quick internet search confirms the subject to be of great

public and media interest, returning dozens of articles in the past month alone.[5] Indeed not only

are the origins of general interest to the public they are also part of a national political debate on

---

[3] *See* Ken Dilanian, "Spying on coronavirus: A little-known U.S. intel outfit has its most important mission yet",
NBC News Online, (Mar. 13, 2020) (explaining NCMI's role in studying the origins of COVID-19),
https://www.nbcnews.com/health/health-news/spying-coronavirus-little-known-u-s-intel-outfit-has-its-n1157296
(last electronically accessed May 3, 2024).

[4] *See also* Bill Gertz, "Pentagon's medical intel arm uncovered evidence suggesting COVID-19's lab origins", The
Washington Times, (Aug. 30, 2023), https://www.washingtontimes.com/news/2023/aug/30/inside-ring-report-dia-
spy-arm-ignored-covid-19-or/, (last electronically accessed May 3, 2024).

[5] *See e.g.*, Dake Kang and Maria Cheng, Toxic: How the search for the origins of COVID-19 turned politically poisonous,
AP News Online (Apr. 22, 2024), https://apnews.com/article/china-covid-virus-origins-pandemic-lab-leak-
bed5ab50dca8e318ab00f60b5911da0c, (last electronically accessed May 3, 2024).

the effectiveness, or absence thereof, agencies like the DIA. [6,7] Needless to say, this national

political debate occurs just months before congressional and presidential elections.

<u>DISCLOSURE IS "LIKELY TO CONTRIBUTE" TO AN UNDERSTANDING OF</u>
<u>GOVERNMENT OPERATIONS OR ACTIVITIES</u>

USRTK is not requesting these records merely for their intrinsic informational value. Ample

and continued media and political interest in the origins of COVID-19 and the pandemic that

resulted from it show that a conclusive answer as to the origins of COVID-19 have yet to be

discovered (*see also* FN 11 *infra*).  Public records show that the NCMI scientists had reason to

doubt narratives implying a natural origin of the virus within months of the pandemic's start. *See*

*supra* at p.4, Jean-Paul Chretien et al., "Critical Analysis of Andersen et al. The proximal origin

of SARS-CoV-2." Similarly, media reports make it amply clear that years later there remains

both massive public interest in the origins of COVID-19 and significant doubts as to the efficacy

of the government's defenses against potentially man-made pathogens, one of the core functions

of the NCMI itself.[8] The requested records may answer this question as to what the government

---

[6] Press Release U.S. Congressional Committee on Oversight and Accountability, "Dr. Anthony Fauci to testify at public hearing on June 3", https://oversight.house.gov/release/breaking-dr-anthony-fauci-to-testify-at-public-hearing-on-june-3/, (last electronically accessed May 3, 2024).

[7] Max Kozlov, "US COVID-origins hearing puts scientific journals in the hot seat", Nature Online, (Apr. 16, 2024), https://www.nature.com/articles/d41586-024-01129-x, (last electronically accessed May 3, 2024).

[8] *See e.g.,* David Zimmermann, "Fauci to Testify Publicly on Pandemic-Era Policies, Covid-19 Origins in June", The National Review (Apr. 24, 2024), https://www.nationalreview.com/news/fauci-to-testify-publicly-on-pandemic-era-policies-covid-19-origins-in-june/ (noting, *inter alia* that Fauci's recent congressional testimony potentially "revealed serious systemic failures in our public health system" and raised "significant concerns about public health officials and the validity of their policy recommendations during the COVID-19 pandemic."), (last electronically accessed May 3, 2024).

knew and when and whether it carried out its duties to safeguard the American public effectively. Any records responsive to this request therefore are likely to have an informative value and are "likely to contribute to an understanding of Federal government operations or activities".

Disclosure of the requested records will allow USRTK to apply its own in-house expertise[9] to analyze and then convey to the public information about the origins of COVID-19 or at least the extent of the government's knowledge of the origins of COVID-19, what the government did with this knowledge and how effective its response was. Thus, the requested records are likely to contribute to an understanding of government operations and activities.

## DISCLOSURE OF THE REQUESTED RECORDS WILL CONTRIBUTE TO A BROAD AUDIENCE OF INTERESTED PERSONS' UNDERSTANDING OF THE ORIGINS OF COVID-19

For reasons already described, the requested records will contribute to public understanding of the NCMI's and DIA's efficacy in proactively identifying natural or man-made pathogens that can and did have a devastating impact on the health and safety of the American public. This is the very mission of the NCMI itself.[10]  As explained above, the records will contribute to public understanding of this topic. *See W. Watersheds Proj. v. Brown*, 318 F.Supp.2d 1036, 1040 (D. Idaho 2004) ("... find[ing] that WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also

---

[9] *See* https://usrtk.org/academic-work/ (providing a list of scientific and public health journal submissions co-authored by USRTK staff) (last electronically accessed Apr. 28, 2024).

[10] *See* DIA's statement on the NCMI's mission at https://twitter.com/DefenseIntel/status/1250876618731634689 ("The mission of the National Center for Medical Intelligence is to provide all-source medical intelligence that delivers decision advantage to U.S. warfighters, defense planners & DoD policymakers.") (last electronically accessed on Apr. 28, 2024), (last electronically accessed May 3, 2024).

how ... management strategies employed by the BLM may adversely affect the environment.")
That there is a "broad audience" for such information is indisputable. For instance, a simple
Google news search for articles that appeared between January 28, 2024 through April 28, 2024
alone, and which contained the phrase "origins of covid-19," yielded at least eleven full pages of
search results directly on point including by USRTK as well as media outlets including the
Washington Post, Los Angeles Times, Wall Street Journal, New York Times, Fox News, New
York Post, National Review and The Hill.

Through USRTK's synthesis and dissemination (by means discussed above and below),
disclosure of information gleaned from the requested records will contribute to a broad audience
of persons who are highly interested in the subject matter. The resulting contribution to the well-
established and huge audience is more than sufficient to satisfy the standard for a fee waiver.
*See e.g., Ettlinger v. FBI*, 596 F.Supp. at 876 (benefit to a population group of some size distinct
from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir.
1994), cert. denied, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of
benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dep't of Hous. & Urban
Dev.*, 405 F.Supp.2d 553, 557 (E.D. Pa.2005) (in granting fee waiver to community legal group,
court noted that while the requester's "work by its nature is unlikely to reach a very general
audience," "there is a segment of the public that is interested in its work").

Indeed, the public still does not currently have an ability to answer the remarkably simple
question as to the origins of COVID-19 and what it meant, or should have meant for both
preemptive and responsive government policy and action.[11] We are also unaware of any previous

---

[11] *See* David Quammen, "The Ongoing Mystery of Covid's Origin, We still don't know how the pandemic started.
Here's what we do know – and why it matters", NYTimes (Aug. 18, 2023),
https://www.nytimes.com/2023/07/25/magazine/covid-start.html, (last electronically accessed on Apr. 28, 2024).

release to the public of these or similar records. See *Cmty. Legal Servs. v. HUD*, 405 F.Supp.2d

553, 560 (D. Pa. 2005) (because requested records "clarify important facts" about agency policy,

"the CLS request would likely shed light on information that is new to the interested public.").

As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d

1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more

potential to contribute to public understanding] to the degree that the information is new and

supports public oversight of agency operations."


## USRTK HAS THE ABILITY TO DISSEMINATE THE REQUESTED INFORMATION BROADLY

USRTK's mission is dedicated to uncovering, analyzing and disseminating information on

"government failures that threaten our health, environment and food system".[12]  It has published

more than 70 articles on COVID-19 alone and has consistently reported on it since November of

2020, shortly after the pandemic began.[13]  As a subject matter expert on health policy its work is

featured in news publications including the New York Times, Washington Post, Le Monde, The

Guardian, Bloomberg, Politico and many others.[14] Its work has also been frequently featured in

the BMJ, one of the world's most influential medical journals. In addition to its broad reach

through newspapers and medical journals of record, USRTK analyzes and disseminates

information through its considerable online presence. For instance, in 2023 alone, more than

744,000 people visited USRTK's extensive website, https://usrtk.org/, and viewed pages more

---

[12] *See* https://usrtk.org/about-u-s-right-to-know/ (last electronically accessed on Apr. 28, 2024).

[13]*See* https://usrtk.org/category/covid-19-origins/ (last electronically accessed on Apr. 28, 2024).

[14] *See* https://usrtk.org/academic-work/ (describing contributions to scientific and public health) (last electronically accessed Apr. 28, 2024).

than one million times. Additionally, USRTK and its staff regularly tweet to a combined following of 77,000 on Twitter, and nearly 10,000 people follow U.S. Right to Know on Facebook. USRTK thus intends to use any or all of these social media outlets to share with the public information obtained as a result of this request. Through these means, USRTK will ensure: (1) that the information requested contributes significantly to the public's understanding of the government's operations or activities; (2) that the information enhances the public's understanding to a greater degree than currently exists; (3) that USRTK possesses the expertise to explain the requested information to the public; (4) that USRTK possesses the ability to disseminate the requested information to the general public; (5) and that the news media recognizes USRTK as a reliable source in the field of government conduct as relates to public health research.

## OBTAINING THE REQUESTED RECORDS IS OF NO COMMERCIAL INTEREST TO THE REQUESTER

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to USRTK's role of educating the general public. USRTK is a 501(c)(3) nonprofit public interest research and media organization dedicated to transparency in public health policy. Due to its nonprofit mission, USRTK has no commercial interest and will realize no commercial benefit from the release of the requested records.

For the aforementioned reasons, USRTK seeks waiver of any fees under FOIA on the above significant public interest basis.

## USRTK REQUESTS A WAIVER OR REDUCTION OF FEES AS A REPRESENTATIVE OF THE NEWS MEDIA

In the alternative, USRTK requests a waiver or reduction of fees as a representative of the news media. The provisions for determining whether a requesting party is a representative of the news media, and the "significant public interest" provision, are not mutually exclusive. As USRTK is a non-commercial requester, it is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F.Supp.2d. 1 (D.D.C. 2010). The fact that USRTK engages in research activities does not lessen its status as a representative of the news media. *See Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) ("publishing information need not be the organization's sole occupation.")

For the purposes of FOIA, DIA must explain any denial of treatment of USRTK as a media outlet. USRTK thus asks for a waiver or limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by a representative of the news media…"). The DIA must address both USRTK's bases for a fee waiver, i.e., based on the "significant public interest test" and based on USRTK's status as a media outlet in the event it denies one of these bases – failure to do so is *prima facie* arbitrary and capricious.


## USRTK IS ENTITLED TO EXPEDITED PROCESSING OF ITS REQUEST

**USRTK's request for expedited processing is for reasons of Compelling Need.** The DIA must address this request for expedited processing; failure to do so is *prima facie* arbitrary and capricious.

Under FOIA, a requester who shows "compelling need" is entitled to expedited processing. 5 U.S.C. § 552(a)(6)(E)(i). *See also* C.F.R § 286.8(e)(1)(i)(B) (compelling need exists where "[t]he information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged government activity." USRTK easily satisfies the DIA's own standard and expedited processing is thus warranted.

<u>USRTK IS PRIMARILY ENGAGED IN THE DISSEMINATION OF INFORMATION AND THE INFORMATION SOUGHT PERTAINS TO GOVERNMENT ACTIVITY</u>

It is indisputable that USRTK as an investigative non-profit is "primarily engaged in the dissemination of information." Its very mission states that it "investigate(s) corporate wrongdoing and government failures that threaten our health, environment and food system". Its website lists dozens of articles where USRTK has combined its investigative or information gathering functions and its editorial and analysis capabilities to co-author articles that have appeared in news outlets and scientific journals. It has additionally combined its information gathering, analysis and editorial skills to publish hundreds of other articles, including more than 70 on COVID-19 alone arguably making it a "site of record" for the dissemination of information related to COVID-19. *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("site of record" is de facto primarily engaged in dissemination of information).

USRTK thus easily satisfies the definition of an organization primarily engaged in the dissemination of information, i.e., that of "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Nat. Sec. Archive v. U.S. Dept. of Defense*, 880

18

F.2d 1381, 1387 (D.C. Cir. 1989). Indeed, organizations with information dissemination activities that are similar to those of USRTK routinely qualify as being "primarily engaged in disseminating information". *See Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003) ("EPIC's request for "news media" status highlighted its publication to date of seven books on privacy, technology and civil liberties issues").

It is furthermore not in dispute that the information sought pertains to "government activity". *See supra* at pp. 10-13 (explaining how records sought pertain to "government activity")*.*

USRTK HAS AN URGENT AND COMPELLING NEED FOR THE RECORDS

The second requirement of a successful application for expedited processing hinges upon an organization's ability to demonstrate an urgent or compelling need to "inform the public concerning actual or alleged government activity." *See* 32 C.F.R § 286.8(e)(1)(i)(B). *See also* 5 U.S.C. § 552(a)(6)(E)(v)(II) ("with respect to a request made by a <u>person</u> primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.) This "urgency" standard is essentially synonymous with media interest. *See Electronic Privacy Info. Ctr. v. Nat'l Sec. Comm'n*, 419 F. Supp. 3d 82, 95 (D.D.C. 2019) ("Evidence such as news articles and other contemporary documents may illuminate whether EPIC's FOIA requests meet the 'urgency to inform' standard."); *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017) ("[b]ut as evidence that they were justified [in their claim of urgency to inform the public], one need look no further than the widespread media attention—including by some of the nation's most prominent news outlets").

*Oversight v. U.S. Dep't of Justice*, 292 F. Supp. 3d 501, 507-08 (D.D.C. 2018) (start and end with review of the media coverage). Here there is no question of media interest in the information that USRTK seeks to analyze and disseminate, namely the origins of COVID-19 and the DIA's work in identifying that and then reacting thereto.

    As previously stated a quick internet search confirms the subject of the records to be of great public and media interest returning dozens of articles in the past month alone. Indeed, courts have routinely found that much lesser showings of media interest are sufficient to warrant expedited processing. *See e.g., American Civil Liberties Union v. United States Department of Justice*, 321 F. Supp. 2d 24, 32 (D.D.C. 2004) (handful of articles sufficient to show sufficient media interest for expedited processing). *Brennan Ctr. for Justice at NYU Sch. of Law v. Dep't of Commerce*, 498 F. Supp. 3d 87, 97 (D.D.C. 2020) (fifty recent articles more than sufficient). Here USRTK points to literally hundreds of articles and dozens in the last month alone – this more than suffices. This is especially so since despite the overwhelming media interest the question USRTK seeks to inform the public on has yet to be answered. [15] Adding further that the subject of the records and the unanswered questions pertaining thereto have evolved into a national debate over the DIA's efficacy in carrying out its stated mission and does so in an election year. *See Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61, 75 (D.D.C. 2006) ("Because the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment.")

---

[15] *See e.g.*, Dake Kang and Maria Cheng, Toxic: How the search for the origins of COVID-19 turned politically poisonous, AP News Online (Apr. 22, 2024), https://apnews.com/article/china-covid-virus-origins-pandemic-lab-leak-bed5ab50dca8e318ab00f60b5911da0c, (last electronically accessed May 3, 2024).

CONCLUSION

USRTK requests that the DIA provide particularized assurance that it is reviewing some

quantity of records with an eye toward production on some estimated but expedited schedule, so

as to establish some reasonable belief that it is processing our request. 5 U.S.C. §

552(a)(6)(A)(i); see also *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*,

711 F.3d 180 (D.C. Cir. 2013). The DIA must at least inform us of the scope of potentially

responsive records, including the scope of the records it plans to produce and the scope of

documents that it plans to withhold under any FOIA exemptions; FOIA specifically requires the

DIA to immediately notify USRTK with a particularized and substantive determination, and of

its determination and its reasoning, as well as USRTK's right to appeal; further, FOIA's unusual

circumstances safety valve to extend time to make a determination, and its exceptional

circumstances safety valve providing additional time for a diligent agency to complete its review

of records, indicate that responsive documents must be collected, examined, and reviewed in

order to constitute a determination. *See Citizens for Responsible Ethics in Washington v. Federal

Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013). *See also*, *Muttitt v. U.S. Central

Command*, 813 F. Supp. 2d 221; 2011 U.S. Dist. LEXIS 110396 at *14 (D.D.C. Sept. 28, 2011)

(addressing "the statutory requirement that [agencies] provide estimated dates of completion").

USRTK further requests an expedited rolling production of records, such that the DIA

furnishes records to the undersigned counsel's attention as soon as they are identified, preferably

electronically, but as needed then to counsel's attention, at the address below. USRTK informs

the DIA of our intention to protect our appellate rights on this matter at the earliest date should

the DIA not comply with FOIA per, *e.g.*, *CREW v. Fed. Election Comm'n*, 711 F.3d 180 (D.C.

Cir. 2013).

USRTK looks forward to your response. If you have any questions, please contact me at the below email address. All records and any related correspondence should be sent to my attention at the address below. If you have any questions, please contact me at the below email address.

Dated: May 5, 2024

Respectfully submitted,
US RIGHT TO KNOW
By Counsel:

/s/ Nathaniel M. Lindzen
Nathaniel M. Lindzen, MA Bar No. 689999[16]
Law Office of Nathaniel M. Lindzen
57 School Street
Wayland, MA 01778
Phone: (212) 810-7627
Email: nlindzen@corpfraudlaw.com

---

[16] D.C. Federal Bar ID No. MA0053

EXHIBIT D

 Gmail

<div align="right">Securities Whistleblower &lt;corpfraudlaw@gmail.com&gt;</div>

## Re FOIA Request by US Right to Know, ATTN: IMO-2 (FOIA)

**~DIA FOIA** &lt;foia1@dodiis.mil&gt;       Mon, May 6, 2024 at 7:13 AM
To: Nathaniel Lindzen &lt;nlindzen@corpfraudlaw.com&gt;

```
Classification: UNCLASSIFIED
=======================================================
```

Greetings Mr. Lindzen,


Thank you for submitting your FOIA Request to the Defense Intelligence Agency.  This email confirms the receipt of your request.  Unfortunately your request do not meet the outlined criteria to grant expedited processing.  However, the DIA FOIA Service Center will do our best to process quickly.



Requests for expedited processing must meet the following criteria:


### May I ask for expedited processing?

The requester must demonstrate one of the following compelling needs:

- Failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.
- Information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged federal government activity.
- Failure to obtain the records on an expedited basis could reasonably be expected to result in an imminent loss of substantial due process rights.


With Warm Regards,

DIA FOIA Service Center

www.dia.mil/FOIA.aspx

(301) 394-6253

**From:** Nathaniel Lindzen <nlindzen@corpfraudlaw.com>
**Sent:** Sunday, May 05, 2024 10:13 PM
**To:** ~DIA FOIA <foia1@dodiis.mil>
**Subject:** [Non-DoD Source] Re FOIA Request by US Right to Know, ATTN: IMO-2 (FOIA)

You don't often get email from nlindzen@corpfraudlaw.com. Learn why this is important

[Quoted text hidden]

Nathaniel Lindzen


--

[Quoted text hidden]

Email: nlindzen@corpfraudlaw.com

=====================================================
Classification: UNCLASSIFIED

---

📄 **FOIA-00181-2024.pdf**
248K

EXHIBIT E



## DEFENSE INTELLIGENCE AGENCY

### WASHINGTON, D.C. 20340-5100



U-24-6655/IMO-2 (FOIA)

FOIA-00181-2024
May 06, 2024

Mr. Nathaniel M Lindzen
Law Office of Nathaniel M. Lindzen
57 School Street
Wayland, MA 01778

Dear Mr. Lindzen,

This letter acknowledges receipt of your Freedom of Information Act (FOIA) request dated May 06, 2024 and is an interim response. You requested:

- **Records related to the genomic analysis of SARS-CoV-2**

We received your request on May 06, 2024 and assigned it case number FOIA-00181-2024. Please use this number on all future correspondence with us regarding your request.

We are unable to respond to your request within the statutory 20 days' response period due to one or more of the following reasons, which are defined in the statute as "unusual circumstances": (I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein.

At this stage of processing your request, we cannot provide an estimated date of completion. As analysis and processing of your request continues, a case officer will better be able to provide an estimate, and at that time, we will provide you with a further interim response.

We typically process requests in the order of receipt. Our backlog currently is in excess of 1,400 requests. The time it takes to respond to a request will vary depending on the complexity of the request and any backlog of requests already pending. If your request is complex, a case officer may contact you to discuss options for expediting your request, including: (I) narrowing the scope or focus of your request or increasing its specificity; (II) specifically describing record(s) you are looking for with additional descriptive details; and (III) including specific event-related information.

We regret that there is currently a substantial delay in processing requests and solicit your patience and understanding. We will process your request as soon as possible. Our FOIA Requester Service Center is available to assist you with any question about the status of your request and any steps you can take to receive a potentially quicker response. For questions,

please contact the FOIA Requester Service Center or our FOIA Public Liaison, preferably via email at FOIA1@dodiis.mil, or at 301-394-6253. DIA's FOIA website is: www.dia.mil/FOIA.

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services that they offer. You may contact OGIS at ogis@nara.gov, toll-free 1-877-684-6448, phone 202-741-5770, fax 202-741-5769, or the following address:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road-OGIS
> College Park, MD 20740-6001

Sincerely,

(for)
C. C. Davison
Chief, Records and Open Government